IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBVIE INC. and ABBVIE BIOTECHNOLOGY LTD | : | |
| | : | |
| v. | : | CIVIL NO. 17-cv-01065-MSG-RL |
| | : | |
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH, BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., and BOEHRINGER INGELHEIM FREMONT, INC. | : | |

**MEMORANDUM AND ORDER CONCERNING
DOC. NO. 73**

Defendants (collectively "Boehringer") have moved to compel plaintiffs (collectively, "AbbVie") to produce an unredacted version of a slide presentation.[1] Boehringer's Motion (BI Mot.) at 1-2 (Doc. No. 73). AbbVie has responded (Doc. No. 107) (AV Res.), and Boehringer has replied to the response (Doc. No. 117) (BI Rep.). I permitted AbbVie to file a sur-reply (Doc. No. 123).

**I.     The Nature of the Dispute.**

During discovery, AbbVie produced an unredacted version of a slide presentation, titled "Humira IP Discussion," dated January 25, 2011. BI Mot. at 2 (referencing Bates number ABV-BI00658329-658347). The slide presentation discussed intellectual property strategies for AbbVie's drug, Humira, in the face of business threats posed by biosimilar drugs. *Id.* In a letter dated May 4, 2018, AbbVie sought to claw back the unredacted version, after Boehringer quoted from it in Boehringer's May 3, 2018 interrogatory responses. *Id.* AbbVie contends that the unredacted version was produced

---
[1] The name on the document is "Humira IP Discussion." AV Res., Exhibit A, at ABV-BI00658329. Boehringer refers to the document as the "Humira Presentation." BI Mot. at 1. AbbVie refers to it as the "Humira IP Deck," as in "slide deck." AV Res. at 1.

inadvertently: although the "original document had contained an 'Attorney-Client Communication/Privileged and Confidential' legend (as well as a page number) on each page, this text was missing from the production version." AV Rep. at 2. Under the protective order previously entered in this case, AbbVie asked that Boehringer refrain from "reviewing and referencing the contents of the Humira IP Deck until AbbVie produced a redacted version of the document." *Id.* at 3. On May 10, 2018 (BI Mot. at 3), AbbVie produced a redacted version of the Humira IP Discussion that removed references to "AbbVie's intellectual property strategy for Humira, including breadth and strength of potential patent claims and claim types as well as patentability of such claims." AV Res. at 2 (referring to ABV-BI00658336). On May 14, 2018 AbbVie produced a privilege log for the redacted Humira IP Discussion. *Id.* at 4 (referring to Exhibit F, transmittal email and privilege log).

Boehringer claims the redacted slides are not subject to the attorney-client privilege because "[t]here is no indication that the Humira Presentation was made between privileged persons in confidence for the purpose of obtaining or providing legal assistance for AbbVie." BI Mot. at 5. Instead, the slides relate to "AbbVie's business strategies" and discuss the "status of programs that AbbVie already launched within the company on a large scale to generate more patent filings." *Id.* Boehringer argues that evaluations of the "competitive position of the company reflects predominately business concerns" that are not subject to attorney client privilege. *Id.* (internal quotations omitted) (quoting from *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 147 (D.C.Del. 1977)).

AbbVie submitted the unredacted Humira IP Discussion slides for my review. Letter of June 11, 2018. AbbVie also submitted two affidavits under seal, one from Perry

Siatis, Esq., an in-house attorney who attended the meeting at which the slide show was presented (Doc. No. 109), and Michael Schwartz, Esq., who examined the original slide show and determined that the footer "Attorney-Client Communication/Privileged and Confidential" was contained in the original.[2] Doc. No. 108.

## II. Discussion

> The attorney-client privilege protects against discovery of: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." See In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007).

*Federal Trade Commission v. Abbvie Inc.*, 2016 WL 4478803, at *2 (E.D.Pa. 2016); *see Idenix Pharmaceuticals, Inc. v. Gilead Sciences, Inc.*, 195 F.Supp.3d 639, 642 (D.Del. 2016). AbbVie, as the party asserting the privilege, bears the burden of proving that the privilege applies. *Id.* (citing to *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986)). Corporate counsel often operates in both a business and legal capacity. "When the communication between an attorney and non-legal personnel primarily relates to business concerns, the communication is not within the scope of attorney-client privilege." *Immersion Corporation v. HTC Corporation*, 2014 WL 3948021, at *1 (D.Del. 2014). Application of this distinction can be

> difficult, since in the corporate community, legal advice "is often intimately intertwined with and difficult to distinguish from business advice." *Sedco International, S.A. v. Cory,* 683 F.2d 1201, 1205 (8th Cir.) . . . Therefore, the court's inquiry is focused on whether "the communication is designed to meet problems which can fairly be characterized as predominately legal." *Cuno,* 121 F.R.D. at 204, citing, 2 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 503(a)(1)(01).

---

[2] Michael Schwartz's affidavit concerns the parties' dispute over the inadvertent disclosure of the slides in unredacted form, the subsequent claw-back letter, and Boehringer's various waiver arguments. *See* BI Mot. at 6-7. I agree with AbbVie that it has not waived its privilege claims. *See* AV Res. at 6-8. I will dispose of the privilege claims on the merits.

3

*Leonen v. Johns-Manville*, 135 F.R.D. 94, 98–99 (D.N.J. 1990) (citations omitted). The mix of business and legal concerns in the Humira IP Discussion is obvious. AbbVie's burden is to demonstrate that the communications in the Humira IP Discussion are directed to issues which are primarily or predominately legal in nature. *Id.; see Idenix*, 195 F.Supp.3d at 642. Another way of putting the test is that the privilege does not apply unless "the communication would not have been made but for the client's need for legal advice or services." *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008) (internal quotation omitted). This rule is consistent with the Supreme Court's instruction that "[e]videntiary privileges must be strictly construed, because they 'contravene the fundamental principle that the public has a right to every man's evidence.'" *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (internal quotations, ellipses and citations omitted).

I will analyze the proposed redactions to determine if AbbVie has met its burden. The redacted slides are identified by page number and a general description of the subject matter. AbbVie proposes to redact the whole slide unless noted otherwise.

### #2   IP strategy development.

This slide contains a pie chart supplying an overview of the various features of AbbVie's "IP Strategy Development Activity." The activity described consists of some activities that would clearly involve non-lawyers, for instance

- "[b]rainstorming to identify innovative next-generation Humira products;"
- "[i]dentify patents for acquisition/license to strengthen portfolio;"
- "[e]valuate patents and license agreements for possible royalty reductions;"

along with some activities that would clearly involve lawyers

- "Prepare for litigation;"

- "[l]itigation defense."

- "[m]onitoring for FTO;"

- "[l]itigation enforcement."

Mr. Siatis' affidavit asserts that he is in-house counsel and Vice President, Biotherapeutics and Legal, with AbbVie. Doc. No. 109, ¶ 1. On January 25, 2011, Mr. Siatis "participated in the group discussion involving the Humira IP Deck and its contents." *Id.* ¶ 7. The "redacted portions of the Humira IP Deck constitute legal advice and requests for legal advice from me and other attorneys in the IP Legal Department, responding to requests for legal advice about intellectual property rights concerning Humira." *Id.* ¶ 4. Mr. Siatis also affirms that the redacted portions of the slide presentation "are information or materials directed to or prepared by me or at my direction in advance of the IP discussion, and/or reflecting conversations with other attorneys in my group." *Id.* ¶ 5.

What is missing is a clear account of how the "communication" in the slide served to either inform or provide a legal opinion or service. Also missing is an account of how the legal issues predominate, or are primary, as opposed to business concerns. The roles of the various attendees at the meeting are not spelled out. Most of the persons listed on the first page of the slide presentation appear to be business, not legal, professionals. It is not clear whether the six people listed on the first slide are the only persons who attended the meeting, or were presenters to a larger group. It is not clear whether the slides were shared with others, either before or after the meeting. It appears that George Averginos, who is apparently not a lawyer but a scientist, took the lead in arranging the meeting and preparing the slides. *See* AV Res. Exhibit B.

*Idenix* is instructive. There, Judge Stark considered a number of assertedly privileged documents, among them a document forwarded to an attorney, described in the privilege log as "prepared by client for counsel . . . and client review regarding legal issues regarding marketing and business development and patent issues regarding nucleosides for the treatment of HCV." 195 F.Supp.3d at 644-45. The court held that given the nature of the document and the ambiguity of the description, Idenix had "failed to show that the 'primary purpose' of the document was not the seeking of advice on a non-legal matter." Along similar lines, in *Federal Trade Commission v. Abbvie Inc.*, 2016 WL 4478803, at *8 (E.D.Pa. 2016) the district court considered an "Email Chain requesting legal advice regarding marketing plams [sic]." AbbVie, the party asserting attorney-client privilege, failed to explain "'WAC price increase,' 'Differential contracting,' [business terms used in the email chain] or the nature of the guidance sought from legal." *Id.* The court held that AbbVie failed to meet its burden to "clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." *Id.* (citations and internal quotations omitted).

Slide #2 is an overview of the coordinated business strategy for enhancing the value of AbbVie's intellectual property. Legal issues and concerns have a role in this strategy, but AbbVie has not "clearly demonstrate[d]" that they predominate. The slide is not subject to attorney-client privilege and must be produced unredacted.

#3  **executive summary [redacted in part];**

AbbVie proposes to redact much of this slide. The only legal issue mentioned in the slide is a heading mentioning patenting of certain innovations. The amplification of the "patenting" heading does not mention legal issues but "business opportunities" and "competitive advantage[s]" advanced by patenting innovations. AbbVie has failed to

6

bear its burden of clearly demonstrating that legal issues predominate. The slide is not privileged and must be produced unredacted.

### #4    copy of a Genentech patent;

The slide consists of a copy of selected portions of a Genentech patent from 2002 contained in a publically available document filed by Genentech. A box outlines one particular claim. There is nothing on the face of the document that marks it as a communication primarily or predominately concerning legal issues. In fact there is no explanation of why the slide was inserted in the discussion, or how the slide either (a) consisted of information provided to counsel as part of a request for a legal opinion or service or (b) consisted of a legal opinion or service. AbbVie has not borne the burden of demonstrating that the slide is a privileged communication. The slide must be produced unredacted.

### #5    diagram designating classes of projects with different valuations;

The slide has nothing to say about a legal issue, and is certainly not primarily or predominately legal in nature. The slide identifies 11 different projects as falling into "3 categories with distinct value propositions." Legal services, considerations, and issues are never mentioned. The slide is not subject to the attorney-client privilege because AbbVie has not clearly demonstrated that legal issues predominate. The slide must be turned over unredacted.

### #6    patent strategy;

The slide is a communication primarily concerning the quality of patent claims the company should be seeking to develop. Legal concerns predominate, and the slide is therefore subject to attorney-client privilege.

### #8 summary of "brainstorm meeting" of October 4-5, 2010 [redacted in part];

No legal concerns, questions, or issues are identified on the slide. Certainly none predominate. The slide is a summary of a "brainstorm meeting" on October 4-5, 2010 designed to "generate ideas to broaden our Humira patent estate in response to Biosimilars." The presence of an attorney in a room full of employees brainstorming about new inventions does not convert everything said into privileged communications. Neither is a slide summarizing the results of the brainstorming meeting privileged because an attorney is sitting in on the slide presentation. The question is whether what was said at the conference – or on the slide – would not have been communicated "but for the client's need for legal advice or services." *Louisiana Mun. Police Employees Retirement System*, 253 F.R.D. at 306. The slide does not show this. AbbVie has not otherwise shown this. The slide is not subject to the attorney-client privilege and must be produced unredacted.

### #10, 11 proposals [redacted in part];

These two slides reproduce a table with columns and rows listing many proposals, and then listing across the page, for each proposal, the project name, its objectives, a "technical success score," a "patentability success score," and a "total score." The "total score" consists of the sum of the "technical success score" and "patentability success score." AbbVie proposes to redact the objectives, the patentability success score and the total score. The objectives describe technical, not legal, objectives for each project. The objectives are grist for the evaluation of both technical feasibility and patentability. The patentability score is primarily a legal opinion, and privileged. Because supplying the total score would also reveal the patentability score, both the

patentability score and total score are subject to attorney-client privilege. The communication of the objectives, however, is just as relevant to the evaluation of a project's chance for technical success as it is to the project's patentability. The legal purpose of the communication of objectives does not predominate, so the objectives are not subject to the attorney-client privilege. The redaction of the objectives will be removed, the redaction of the patentability and total scores retained.

#### #14  timeline for execution of patent strategy;

Legal concerns are not exclusive, but they predominate in this slide. The slide is subject to attorney-client privilege.

#### #17  summary of proposals [redacted in part];

The slide contains a "summary of proposals," with the same format as slides 10-11, except that "proposals" are described rather than "objectives." AbbVie proposes to redact the description of the proposals, the patentability score and the total score. For the same reasons given in my discussion of slides 10-11, the patentability and total score will remain redacted but the "proposal" will be unredacted.

#### #19  examples of desired claims.

The slide provides examples of desired claims. No context is provided. There are no clear legal issues discussed in the slide. There is nothing about the information in the slide that indicates that legal issues predominated, or were the primary concern of the slide's creator or audience. AbbVie has not born its burden to demonstrate that legal

issues are the communication's primary concern. The slide will be produced unredacted.

**ORDER**

For the reasons described above, it is on this 14th day of June, 2018, **ORDERED** that

(1) Humira IP Discussion slides 2, 3, 4, 5, 8, and 19 must be produced unredacted;

(2) slides 6 and 14 will remain redacted in full; and

(3) slides 10, 11 and 17 will be produced partially redacted, as directed above.

BY THE COURT:


*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE